IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Jevon Jones JACONI, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Jevon Jones JACONI, Respondent.

Supreme Court

*No. 03–2039–D. Decided November 7, 2003.*

2003 WI 137

(Also reported in 671 N.W.2d 1.)

1

¶ 1. PER CURIAM. We review the stipulation filed by Attorney Jevon J. Jaconi and the Office of Lawyer Regulation (OLR) pursuant to SCR 22.12. On July 31, 2003, the OLR filed a complaint in this court alleging 20 separate counts of misconduct against Jaconi. Jaconi did not file an answer but instead he and the OLR filed a SCR 22.12 stipulation in which Jaconi admitted the facts and misconduct as alleged in the OLR's complaint and agreed to the level of discipline the OLR sought in this disciplinary matter—a one-year suspension of Jaconi's license to practice law in this state, plus a requirement that Jaconi refund money to clients and an individual who paid a portion of his fees.

¶ 2. We approve the stipulation and adopt the stipulated facts and conclusions regarding Jaconi's 20 counts of misconduct as alleged in the OLR's complaint. We determine that the seriousness of Jaconi's misconduct warrants suspension of his license to practice law in this state for a period of one year. We also agree that Jaconi should be required to make the refunds to his clients and the other individual in the amounts stipulated.

¶ 3. Attorney Jevon Jones Jaconi was admitted to practice law in Wisconsin in 1998 and has not previously been disciplined. Currently he is not practicing

law; his license was administratively suspended on June 3, 2003, for his failure to comply with mandatory CLE requirements.

¶ 4. In the OLR's disciplinary complaint filed in this court it was alleged that Jaconi had committed 20 separate counts of misconduct. Those counts involved Jaconi's representation of seven separate clients. In partial explanation for his numerous acts of misconduct Jaconi has submitted a "personal statement" which was incorporated in that stipulation. Jaconi's statement asserts that he was elected district attorney for Kewaunee county immediately upon his graduation from the University of Dayton Law School and his successful completion of the Wisconsin bar exam. Prior to that time, according to Jaconi, he had neither prosecuted nor defended a criminal case. After one term as district attorney, Jaconi did not run for reelection and opened his own practice. As noted, he is no longer practicing law having been administratively suspended for failure to comply with mandatory CLE requirements.

¶ 5. Jaconi now admits to the facts and misconduct as alleged in the OLR complaint. Briefly summarized, the allegations are these:

## I. REPRESENTATION OF M.N.

## COUNTS ONE THROUGH FIVE

¶ 6. The OLR complaint alleged, and Jaconi now stipulates, that on August 18, 2001, M.N. hired Jaconi to represent her on a felony matter in Brown County Circuit Court; she agreed to pay him a flat fee of $1250 and paid $600 of that amount on September 11, 2001. At Jaconi's request, M.N. signed an "Authorization to Appear" so that Jaconi could appear in court on her

behalf without her being present. However, an Authorization to Appear does not apply in felony matters in Wisconsin; defendants charged with a felony must appear personally. Jaconi erroneously informed M.N. that she did not need to personally appear at her adjourned initial appearance. When neither Jaconi nor M.N. appeared at that adjourned hearing, a bench warrant for M.N.'s arrest was issued; an additional complaint was then filed against her for felony bail jumping.

¶ 7. After M.N. was informed about the bench warrant, she repeatedly called Jaconi but he did not return her calls. She then personally scheduled a hearing in the circuit court seeking to quash the warrant. Although Jaconi had not returned any of her calls he appeared at that hearing. The circuit court subsequently cancelled the bench warrant but informed M.N. and Jaconi that additional paperwork would be needed to fully resolve the bail jumping issue. Jaconi stated he would take care of that paperwork but failed to do so.

¶ 8. Later when M.N. was arrested on the felony bail jumping charge, she repeatedly called Jaconi but received no response from him. She then retained substitute counsel.

¶ 9. M.N. sent Jaconi a certified letter terminating his services and requesting that he return her file and the $600 fee she had paid. Jaconi failed to respond to that letter. However, he subsequently appeared at M.N.'s pretrial conference and gave her file back and gave her a check dated December 7, 2001, written on his law office account in the amount of $600. M.N., however, was unable to cash that $600 check because there were insufficient funds in Jaconi's office account to cover it. Subsequently, on January 2, 2002, that account was closed. Although she telephoned him many times

about that dishonored check, Jaconi never responded. M.N. made over 25 calls to Jaconi but he never telephoned or wrote to her although ultimately she did receive a $600 refund from him.

¶ 10. Based on this admitted course of conduct the OLR complaint charged Jaconi with five counts of misconduct, to which he now stipulates:

*COUNT ONE:* By incorrectly advising M.N. that she did not need to appear at the adjourned initial appearance in a felony criminal matter, resulting in M.N.'s failure to appear and in a criminal charge against her for felony bail jumping, for which she was arrested, Jaconi failed to provide competent representation to M.N., in violation of SCR 20:1.1.

*COUNT TWO:* By failing to take appropriate steps after September 12, 2002, to fully resolve the bail jumping issue, such that a felony bail jumping complaint and arrest warrant were subsequently issued in the matter, Jaconi failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.

*COUNT THREE:* By failing to keep M.N. informed about the status of her matter and by failing to promptly respond to her requests for information, Jaconi failed to respond to reasonable requests for information, in violation of SCR 20:1.4(a).

*COUNT FOUR:* By failing to promptly refund an unearned retainer, Jaconi failed to take steps to the extent reasonably practicable to protect a client's interest, in violation of SCR 20:1.16(d).

*COUNT FIVE:* By writing and providing to M.N. his $600 check on his law firm account that Jaconi knew could not be cashed, Jaconi engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).

## II. REPRESENTATION OF T.O.

### COUNTS SIX THROUGH NINE

¶ 11. The OLR complaint alleged, and Jaconi now stipulates, that on November 28, 2001, T.O. hired Jaconi to represent her in municipal court in DePere on charges of operating while intoxicated, operating with a prohibited blood alcohol content, obstruction, and operating after suspension. Jaconi appeared with T.O. at her initial appearance at which she entered a not guilty plea. At that time, T.O. informed Jaconi that her primary concern was with the OWI charge; he assured her that he would get that charge reduced. T.O. paid Jaconi $250 as half payment of the flat fee of $500 he had agreed to accept to represent her.

¶ 12. T.O. called Jaconi numerous times over the next two-week period but received no response from him until December 13, 2001, when he called and asked her to meet him that evening. She did so and Jaconi again assured her that he would get the OWI charge reduced; he also stated that he could get the other charges dropped. At that meeting, T.O. wrote Jaconi a check for the remaining $250 on his agreed upon fee. According to T.O., Jaconi promised to provide her a receipt for those payments and stated that he would call her with respect to the status of her case. However, between December 13, 2001, and January 3, 2002, Jaconi failed to respond to T.O.'s numerous telephone calls.

¶ 13. On January 3, 2002, Jaconi telephoned T.O. and told her that her trial was scheduled for that evening. T.O. had not received any prior notice of that trial date; nor had she received anything in writing from Jaconi about the scheduled trial. Jaconi told T.O.

6

that she would be pleading no contest to the OWI charge. When T.O. again told him that she did not want to plead no contest to the OWI count, Jaconi told her that he would talk to the prosecuting attorney and get back to her before the trial. He did not do so. Instead, on January 3, 2002, Jaconi appeared in municipal court on T.O.'s behalf and entered a plea of no contest for her to the OWI charge. She was not present at that hearing.

¶ 14. As part of the penalty for the OWI violation, T.O.'s driver's license was suspended for seven months. Jaconi, however, did not inform T.O. about the seven-month suspension or about the disposition of her OWI case, and despite her repeated telephone calls to him after January 3, 2002, Jaconi never responded.

¶ 15. On February 28, 2002, T.O. sent a certified letter to Jaconi dismissing him as her attorney and requesting an accounting for the $500 fee she had paid. She also asked for copies of all the paperwork pertaining to her case. That certified letter was returned unclaimed.

¶ 16. After the OWI charge against her had been resolved in municipal court, T.O. continued to drive unaware that her license had been suspended for seven months. Subsequently, she received a citation for operating after suspension.

¶ 17. Based on this admitted course of conduct, the OLR complaint charged Jaconi with an additional four counts of misconduct, to which he now stipulates:

*COUNT SIX:* By failing to maintain proper communication with T.O., Jaconi failed to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information, in violation of SCR 20:1.4(a).

*COUNT SEVEN:* By failing to adequately explain to T.O. her plea options so she could make informed

7

decisions regarding her representation, Jaconi failed to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation, in violation of SCR 20:1.4(b).

*COUNT EIGHT:* By failing to abide by T.O.'s decision not to plead no contest to the OWI charge, Jaconi failed to abide by a client's decisions concerning the objectives of representation and consult with the client as to the means by which they are to be pursued, in violation of SCR 20:1.2(a).

*COUNT NINE:* By failing to provide T.O. with documents relating to the disposition of her case, and by failing to provide T.O. with an accounting of the $500 she paid him, Jaconi failed to take steps to the extent reasonably practicable to protect a client's interests, in violation of SCR 20:1.16(d).

## III. REPRESENTATION OF J.Y.

### COUNTS TEN THROUGH TWELVE

¶ 18. The OLR complaint alleged, and Jaconi now stipulates, that on August 8, 2001, Jaconi agreed to represent J.Y. and commence a divorce action on J.Y.'s behalf for a flat fee of $1200. On August 8, 2001, J.Y.'s friend paid $200 to Jaconi toward that fee. On November 20, 2001, J.Y. paid Jaconi $125; then on January 25, 2002, J.Y. paid Jaconi an additional $50.

¶ 19. J.Y. also discussed with Jaconi a potential medical malpractice claim and gave Jaconi copies of J.Y.'s medical records and medication histories concerning that claim.

¶ 20. After their initial August 8, 2001, conference, J.Y. had only one additional meeting with Jaconi. After that second meeting, J.Y. had no further contact with Jaconi.

8

¶ 21. Jaconi never prepared a petition for divorce on J.Y.'s behalf nor did he return J.Y.'s repeated telephone calls about the matter. On March 13, 2002, J.Y. sent Jaconi a certified letter terminating his representation and requesting the return of the money that had been paid toward Jaconi's fee. After three attempts at delivery, J.Y.'s letter was returned by the post office as unclaimed.

¶ 22. Jaconi subsequently informed the OLR investigators that he was willing to refund the money J.Y. and his friend had paid but Jaconi feared that might be construed as an attempt by him to inappropriately influence an OLR grievant. Jaconi was advised by the OLR that he could refund J.Y.'s money and it would not be construed as an attempt by him to influence a grievant. Despite that assurance, Jaconi never refunded J.Y.'s payments and has not returned J.Y.'s medical documents.

¶ 23. Based on this admitted course of conduct, the OLR complaint charged Jaconi with three counts of professional misconduct, to which he now stipulates:

> COUNT TEN: By failing to commence a divorce action on behalf of J.Y. over the course of six months, Jaconi failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.

> COUNT ELEVEN: By failing to respond to J.Y.'s phone calls or otherwise communicate with J.Y. after the two initial meetings, and by failing to accept a certified letter from J.Y., Jaconi failed to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information, in violation of SCR 20:1.4(a).

> COUNT TWELVE: By failing to return J.Y.'s money, and by failing to return the materials relating to J.Y.'s malpractice claim, Jaconi failed to take steps to the

extent reasonably practicable to protect a client's interests, in violation of SCR 20:1.16(d).

## REPRESENTATION OF D.C.

### COUNTS THIRTEEN AND FOURTEEN

¶ 24. The OLR complaint alleged, and Jaconi now stipulates, that in November 2001 D.C. hired Jaconi to represent her in a divorce action for a $1200 flat fee. She paid him $800 of that agreed upon fee. D.C. was thereafter hired by Jaconi to work in his office; however, based on her observations there, she changed her mind about having him represent her in her divorce action. D.C. then requested a refund of the $800 fee she had paid. On December 14, 2001, she met with Jaconi and he gave her a check drawn on his law office account in that amount. Jaconi asked her, however, to wait until December 17, 2001, to cash the check.

¶ 25. After December 17, 2001, D.C. contacted Jaconi's bank on several occasions to determine if there were sufficient funds in his account to cover the check. Each time she was advised that there were not. Jaconi subsequently closed that account on January 2, 2002. Thereafter, D.C. made several unsuccessful attempts to contact Jaconi about the return of her money and about the worthless check he had given her. She subsequently filed a complaint with the Kewaunee County Sheriff's Department. After Jaconi was contacted by the sheriff's department, he returned D.C.'s $800 and also paid the handling fee charged by the sheriff's department. D.C. then withdrew her complaint.

¶ 26. Based on this admitted course of conduct, the OLR complaint charged Jaconi with an additional two counts of professional misconduct, to which he now stipulates:

10

*COUNT THIRTEEN*: By failing to have sufficient funds in his law office account to cover the $800 refund check he issued to D.C., and by not returning those funds to D.C. until she had filed a complaint with the Kewaunee County Sheriff's Department, Jaconi failed to take steps to the extent reasonably practicable to protect a client's interests, and failed to refund an advance payment of fee that had not been earned, in violation of SCR 20:1.16(d).

*COUNT FOURTEEN:* By providing to D.C. his $800 check on his law firm account that Jaconi knew could not be cashed, Jaconi engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).

## IV. REPRESENTATION OF R.J.

## COUNTS FIFTEEN AND SIXTEEN

¶ 27. The OLR complaint alleged, and Jaconi now stipulates, that in June 2001 Jaconi was appointed by the state public defender to represent R.J. in a felony criminal matter in Brown County Circuit Court. Jaconi represented R.J. until December 12, 2001, at which time successor counsel was appointed. Jaconi did not represent R.J. at the time of the disposition of the criminal matter.

¶ 28. Between July 2001 and October 15, 2001, R.J. and/or his family members made numerous telephone calls to Jaconi attempting to discuss or learn the status of the criminal matter. All of those calls were unanswered. In addition, on one occasion Jaconi failed to be available for a prearranged conference call with R.J., and Jaconi failed to visit R.J. in prison.

¶ 29. Jaconi appeared at R.J.'s arraignment on July 16, 2001, and again at R.J.'s final pretrial conference on October 15, 2001. Prior to those appearances,

11

R.J. had informed Jaconi that he did not want to enter into a plea agreement; rather, R.J. told Jaconi that he wanted to proceed to trial on the criminal charge. Despite that instruction, Jaconi wrote a letter to the assistant district attorney handling the criminal matter inquiring about the possibility of a plea bargain. The prosecutor responded with a proposed plea agreement but Jaconi did not inform R.J. about that correspondence.

¶ 30. At R.J.'s October 15, 2001, pretrial conference, Jaconi urged R.J. to accept the plea bargain because R.J. was already in prison. Again R.J. told Jaconi that he wanted to go to trial on the criminal charge. Despite R.J.'s repeated statements that he wanted a trial, Jaconi did not undertake thorough pretrial preparations. When R.J. later told Jaconi that he wanted someone else to represent him, Jaconi withdrew as counsel.

¶ 31. Based on this admitted course of conduct regarding his representation of R.J., the OLR complaint charged Jaconi with an additional two counts of professional misconduct, to which he now stipulates:

> *COUNT FIFTEEN*: By failing to prepare for a trial, and instead pursuing a plea agreement with the district attorney when his client was adamant from the outset that he wanted to go to trial, Jaconi failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.

> *COUNT SIXTEEN*: By failing to respond to reasonable requests for information and by failing to keep R.J. reasonably informed about the status of a matter from July 2001 to October 15, 2001, Jaconi failed to keep a client reasonably informed about the status of a matter and promptly comply with reascnable requests for information, in violation of SCR 20:1.4(a).

12

## V. REPRESENTATION OF V.S.

### COUNTS SEVENTEEN AND EIGHTEEN

¶ 32. The OLR complaint alleged, and Jaconi now stipulates, that on September 20, 2001, V.S. hired Jaconi to represent him in a small claims matter and paid Jaconi $200 toward the agreed upon $500 flat fee. Jaconi thereafter filed a small claims action on December 6, 2001, naming K Motors as the defendant. V.S. subsequently notified Jaconi that K Motors had not been served with a small claims summons and complaint because that defendant had changed its name to Easy Auto Sales.

¶ 33. At the initial return date of December 26, 2001, Jaconi appeared in the small claims action; however, because an amended complaint was needed naming Easy Auto Sales as the defendant, an adjourned return date of January 14, 2002, was scheduled. After December 26, 2001, however, V.S. was unable to reach Jaconi despite his numerous attempts to do so by telephone and letter. Four subsequent return dates were adjourned because Jaconi failed to appear.

¶ 34. V.S. then sent a letter to Jaconi expressing displeasure about the quality of Jaconi's services and complaining that Jaconi had not returned his telephone calls and had failed to appear on the scheduled court dates. In that letter, V.S. informed Jaconi that the next court date was April 10, 2002, and asked Jaconi to contact him before that date. Jaconi did not do so. On April 10, 2002, Jaconi appeared in the small claims matter. However, because he had not contacted V.S. prior to that return date, Jaconi was unaware that V.S. would be unable to appear at that date because of a work conflict. The small claims action was then dismissed on that date because of V.S.'s failure to appear.

¶ 35. Based on this admitted course of conduct regarding his representation of V.S., the OLR complaint charged Jaconi with an additional two counts of professional misconduct, to which he now stipulates:

*COUNT SEVENTEEN*: By failing to appear at several court dates and by failing to file and serve necessary amended pleadings, Jaconi failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.

*COUNT EIGHTEEN*: By failing to respond to V.S.'s numerous telephone and written inquiries, Jaconi failed to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information, in violation of SCR 20:1.4(a).

## VII. REPRESENTATION OF V.S.

### COUNTS NINETEEN AND TWENTY

¶ 36. The OLR complaint alleged, and Jaconi now stipulates, that in late 2001 V.S. contacted Jaconi about representing V.S. and J.B. in an ordinance violation matter involving V.S.'s alleged use of J.B.'s hunting license. On January 8, 2002, V.S. paid Jaconi a flat fee of $250 for the representation. The matter was scheduled for a plea hearing on January 22, 2002. Prior to that date, V.S. left several telephone messages for Jaconi but received no response from him.

¶ 37. On the January 22, 2002, plea-hearing date, Jaconi did not appear. Instead, without informing V.S., Jaconi entered a written appearance and a plea of not guilty on V.S.'s and J.B.'s behalf. Both J.B. and V.S. personally appeared at that January 22 hearing. After that hearing, V.S. left over 30 telephone messages for Jaconi but received no response from him.

14

¶ 38. On February 20, 2002, V.S. filed a grievance with the OLR complaining about Jaconi's failure to respond to his repeated inquiries. It was only after V.S. received a copy of Jaconi's response to that grievance that V.S. discovered that a trial date in the ordinance matter had been set for June 21, 2002. Jaconi appeared at that June 21 court trial but neither V.S. nor J.B. had been contacted by Jaconi prior to that trial.

¶ 39. Based on admitted course of conduct regarding his representation of V.S. and J.B., the OLR complaint charged Jaconi with an additional two counts of professional misconduct, to which he now stipulates:

> *COUNT NINETEEN:* By failing to appear on the plea date when he had not informed his clients that he did not intend to appear, and by failing to contact his clients prior to June 21, 2002 to prepare for trial, Jaconi failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.

> *COUNT TWENTY:* By failing to return V.S.'s telephone calls, by failing to have any contact with his clients, either written or oral between January 8, 2002 and the trial on June 21, 2002, Jaconi failed to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information, in violation of SCR 20:1.4(a).

¶ 40. As noted, Jaconi has now stipulated to these 20 counts of misconduct as alleged by the OLR in its complaint. He admits the facts and the misconduct and agrees that a one-year suspension of his license to practice law in this state is an appropriate sanction for that misconduct. He also agrees with the OLR that he should be ordered to refund $500 to T.O., $175 to J.Y., and $200 to J.Y.'s friend who paid that amount to Jaconi as part of the flat fee in the J.Y. matter.

15

¶ 41. We approve the stipulation and determine that the seriousness of Jaconi's misconduct warrants a suspension of his license to practice law in this state for one year. Jaconi's admitted acts are serious violations of the Rules of Professional Conduct governing lawyers in this state. We also agree that Jaconi should make the refunds in the stipulated amounts.

¶ 42. IT IS ORDERED that the license of Jevon Jones Jaconi to practice law in Wisconsin is suspended for a period of one year, effective the date of this order.

¶ 43. IT IS FURTHER ORDERED that Jevon Jones Jaconi comply with the provisions of SCR 22.26 regarding the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 44. IT IS FURTHER ORDERED that within 60 days of the date of this order Jevon Jones Jaconi shall make refunds in the amounts and to the persons as stipulated. If those refunds are not paid within 60 days, and absent a showing to this court of his inability to make such refunds within that time, the license of Jevon Jones Jaconi to practice law in Wisconsin shall remain suspended until further order of this court.